■ SHENEL CLARK BRELAND, Appellant, v JAMAICA HOSPITAL MEDICAL CENTER, Respondent, et al., Defendant. [854 NYS2d 209]—

On October 21, 2002 James Breland (hereinafter the decedent) was taken by ambulance to the emergency room of the defendant Jamaica Hospital Medical Center (hereinafter the Hospital), complaining of a severe headache, dizziness, and blurred vision. The decedent, who suffered a brain hemorrhage, died two days later.

The plaintiff, the administratrix of the decedent's estate, commenced the instant action against the Hospital and another defendant. The plaintiff asserted causes of action to recover damages for medical malpractice and wrongful death alleging, inter alia, that the Hospital's staff delayed the decedent's treatment in certain respects, and that such delays constituted departures

from good and accepted medical practice. The Hospital subsequently moved for summary judgment dismissing the complaint insofar as asserted against it. The Supreme Court granted that motion and entered judgment in favor of the Hospital. We reverse.

On its motion, the Hospital established its prima facie entitlement to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). The Hospital provided an affidavit of an expert neurosurgeon, who, upon reviewing the decedent's medical records and the deposition testimony, opined to a reasonable degree of medical certainty that the delays in treatment did not constitute departures from good and accepted medical practice, and moreover, were not proximate causes of the decedent's death (*see Rebozo v Wilen*, 41 AD3d 457, 458 [2007]; *Thompson v Orner*, 36 AD3d 791, 792 [2007]; *Williams v Sahay*, 12 AD3d 366, 368 [2004]).

In opposing the motion, the plaintiff provided an affidavit from an expert neurologist, who, upon reviewing the decedent's medical records and the deposition testimony, opined to a reasonable degree of medical certainty that the delays in treatment constituted departures from good and accepted medical practice, and were proximate causes of the decedent's death. Contrary to the conclusion of the Supreme Court, the plaintiff's expert's knowledge of the relevant standards of care was established (*see Erbstein v Savasatit*, 274 AD2d 445, 445-446 [2000]). Furthermore, the affidavit of the plaintiff's expert was sufficient to raise triable issues of fact as to whether the Hospital's staff departed from good and accepted medical practice in its treatment of the decedent, and whether such departure was a proximate cause of the decedent's death (*see Vera v Soohoo*, 41 AD3d 586, 587 [2007]; *Rebozo v Wilen*, 41 AD3d at 458; *Thompson v Orner*, 36 AD3d at 792; *Dellacona v Dorf*, 5 AD3d 625 [2004]; *Domaradzki v Glen Cove Ob/Gyn Assoc.*, 242 AD2d 282 [1997]; *Sisko v New York Hosp.*, 231 AD2d 420, 422 [1996]). Miller, J.P., Covello, Eng and Chambers, JJ., concur.